## CALVIN McKINNEY v. STATE.

No. A-3757. Opinion Filed Nov. 16, 1921.

(201 Pac. 673.)

(Syllabus.)

1. **Evidence—Accomplice Testimony—Corroboration.** A conviction cannot be had upon the testimony of an accomplice, or accomplices, unless he or they be corroborated by such other evidence as tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof.

2. **Trial—Province of Court and Jury—Question Whether Witness an Accomplice.** Where the evidence is conflicting as to whether or not a witness participated in committing the offense charged, the question as to whether or not such witness is an accom-

plice is one of fact for the jury; but where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice.

3. **Same—Instruction.** Under the undisputed facts shown in this record, one of the state's witnesses, T., as a matter of law was an accomplice. As to whether another witness, G., was an accomplice, the facts are disputed, and are reasonably susceptible of either interpretation, in which case there is an issue of fact for the jury; and under the circumstances here these issues as to both witnesses, on request of defendant, should have been covered by appropriate instructions to the jury.

Appeal from District Court, Pittsburg County; Harve L. Melton, Judge.

Calvin McKinney was convicted of bank robbery, and was sentenced to serve a term of 10 years in the state penitentiary, and he appeals. Reversed and remanded.

Wilkinson, Scott & Hudson, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J. Calvin McKinney, plaintiff in error, referred to in this opinion as the defendant, was convicted at the November, 1919, term of the district court of Pittsburg county of the crime of bank robbery, committed August 14, 1916, and his punishment was by the jury fixed at 10 years' imprisonment in the state penitentiary, and he appeals.

In order to intelligently make the proper legal deductions involved, it will be necessary to recite the facts in narrative form, at some length. The defendant was not present at the robbery, and was convicted on the theory that he conspired with the actual perpetrators to commit the crime, and furnished them with a horse, gun, and saddle.

It was the theory of the state that this defendant, Simeon Lewis, Ernest Gregory, Milton Spears, and Bill Tidwell, from

time to time during a period of two weeks before the crime was committed, conspired together to rob the bank of Crowder; that during this time these parties met frequently at and near the house of Ernest Gregory, a neighbor of this defendant; and discussed and agreed upon ways and means of robbing the bank. That it was agreed that the defendant, Lewis, and Gregory were to furnish two horses and two saddles, guns, and ammunition to Spears and Tidwell, who were to perform the physical acts of robbery so soon as all the arrangements were completed, and the time and circumstances seemed favorable to successfully obtain and get away with the booty. It was agreed that Lewis and Gregory should first go to Crowder and see if the officers were there, and whether there were many automobiles in sight. If the prospects looked promising, Tidwell and Spears were then to appear and consummate the robbery.

It is claimed by Tidwell and Mrs. Gregory, witnesses for the state, that the plans to rob the bank were discussed and agreed upon in the presence of Mrs. Gregory on eight or ten different occasions before the robbery; that Tidwell was a fugitive from justice, in hiding at or near the home of the Gregorys for two weeks prior to the robbery, and that Mrs. Gregory helped conceal him and furnished him with food and sustenance while he was so in hiding, awaiting a favorable opportunity to rob the bank. The evidence disclosed no overt threats or coercion on the part of any one to compel or induce Mrs. Gregory to furnish him with food, or to assist in keeping him hid, but under the provisions of section 2099, R. L. 1910, hereafter quoted, an inference may be drawn that Mrs. Gregory was acting under duress on the part of her husband.

The testimony of Tidwell and other state's witnesses shows that the first attempt to rob the bank, made one week

previous to the actual robbery, was abandoned, and Spears and Tidwell were intercepted by their confederates, Lewis and Gregory, and turned back on account of the presence of officers and a large number of other persons of Crowder on that day. One week later the second attempt was successfully made. Lewis and Gregory were in Crowder on that forenoon, and at the noon hour Tidwell and Spears entered the bank, and with drawn guns forced the cashier and a bank examiner, the only persons then in the bank, to put several hundred dollars in money into sacks brought for that purpose, after which they forced the cashier and the bank examiner into the bank vault and closed the door, and made their escape on horseback, carrying the sacks of money with them. Presently an alarm was given, and the officers pursued the robbers and captured Spears. Later Tidwell abandoned his horse and escaped on foot, and returned to his hiding place in the bottoms, near the Gregory home, where it is claimed that the loot was divided equally among Tidwell, Gregory, Lewis, and the defendant. For some days after the robbery Mrs. Gregory helped to conceal Tidwell, and again furnished him with food and sustenance. Mrs. Gregory finally purchased another horse, with which Tidwell made his escape. Tidwell and Gregory fled together, and about a year later Tidwell was apprehended and arrested in Arkansas and brought back to Pittsburg county, where he plead guilty to a charge of manslaughter in the first degree, and was sentenced to a term of 30 years in the state penitentiary. After he was sentenced on this manslaughter charge, he confessed to this and other crimes, for which he was given a further sentence in the penitentiary. So far as this record shows, Gregory has never been apprehended or brought to trial. Simeon Lewis, one of the other alleged conspirators, was tried and acquitted of this crime.

Mrs. Gregory claimed that this defendant owed her husband some money for a team of horses purchased from him some time before the robbery. After the robbery she made several attempts to collect, but the defendant denied the obligation, claiming that he had paid Ernest Gregory for the horses. There is some testimony tending to show that this caused some ill feeling between Mrs. Gregory and the defendant, and she threatened to get even with him.

The testimony is undisputed that at Tidwell's invitation Mrs. Gregory visited him at the penitentiary on two occasions, after the preliminary and before the trial of this defendant, which took place more than three years after the preliminary.

The proof shows that the horse ridden by Tidwell belonged to the defendant. The defendant claimed that the horse was stolen from him and taken without his knowledge or consent. The state claimed that it was furnished the robbers in accordance with their previous agreement, as shown by the confessions made by Tidwell and Mrs. Gregory. The state claims further that a gun and saddle used by Spears belonged to or were furnished by this defendant. The defendant denied the ownership of the gun or saddle, or that he furnished them to these parties, and there is no independent evidence from disinterested sources that the gun and saddle found belonged to the defendant.

It is claimed by the defendant that his conviction rests wholly upon the testimony of hostile accomplices; that Mrs. Gregory actively participated in carrying out the common plans to perpetrate the robbery before and after it was accomplished.

There are 43 assignments of error urged in this case. If it should appear that Tidwell and Mrs. Gregory were ac-

complices, and that this conviction rests wholly upon their testimony, without material corroboration, then the other assignments of error need not be noticed. Section 5884, R. L. 1910, is as follows:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

We quote from the record as follows:

Testimony of Mrs. Gregory.

"Q. Before that bank was robbed, Mrs. Gregory, did you hear any conversation with reference to the proposed robbing of the bank? A. Yes, sir.

"Q. Where was that conversation had? A. It was at our house.

"Q. Who was there? A. Well, Spears, Ernest Gregory, Calvin McKinney, Sim Lewis, and Bill Tidwell.

"Q. How long before the bank was robbed? A. Well, I don't know—about a couple of weeks Tidwell came there before the bank was robbed.

"Q. Did Calvin McKinney take part in that conversation? A. Yes, sir.

"Q. Tell what was said in that conversation. A. Well, they figured on what bank they would rob; whether it would be the Crowder bank or the Kinta bank, which would be the best to get away on.

"Q. What did Calvin McKinney say in that conversation? A. Well, he told them he would furnish them with a gun and a horse and saddle for a portion of the money. * * *

"Q. Just tell the jury about the conversation. A. Well, they just decided what bank they would take. Said they

needed some money; they all needed some money, and Tidwell told them that if they would furnish him and this here Spears horses and ammunition they would go get the money and divide with them, and they agreed to do that.

"Q. Who agreed?   A. Sim Lewis, Ernest Gregory, and Calvin McKinney."

### Cross-Examination.

"Q. He (Bill Tidwell) stayed at your house two weeks before the bank was robbed?   A. Something about that.

"Q. And they stayed there after the bank was robbed? A. Not at the house. They stayed in the field.

"Q. Well, you fed him?   A. Yes, amongst us we did.

"Q. You knew he was being fed down there?.   A. Yes, sir.

"Q. And you did the cooking?   A. Not all of it.

"Q. You sent him his meals?   A. Yes, sir, I sent him grub. I knew better than not to.   I certainly did.   *   *   *

"Q. How many times did those five meet together there (at your house) before the robbery?   A. I don't know; I didn't put it down.

"Q. As many as 10 times?   A. That many or more. They met there quite a number of times.   *   *   *

"Q. Did you go to see Bill while he was over there in the pen?   A. Yes, sir; I've been there twice to see him."

With reference to procuring a horse for Tidwell and her husband, with which they made their escape, there appears the following:

"Q. And you went and bought a horse for Tidwell out of the money?   A. Yes, sir; I bought a horse out of the money."

### Testimony of Bill Tidwell.

"Q. Where did you stay down there in that bottom?   A. Just sat around down there.

"Q. In whose field? A. Sim Lewis' field.

"Q. Mrs. Gregory sent your meals down there? Yes, sir.

"Q. And she knew you were going to rob this bank? A. I suppose she did. She heard us talk about it.

"Q. Then for a week or 10 days before you robbed the bank Mrs. Gregory sent your meals down to you at the creek in the woods? A. Yes; and afterwards too.

"Q. And at that time she knew you were scouting; she knew that? A. Yes; I guess she did.

"Q. Well, you had told her—talked about it in the presence of her—hadn't you? A. Yes; we talked about everything in front of her.

"Q. Talked about robbing the store at Crowder in front of her, didn't you? A. Ernest was telling her pretty near everything."

An accomplice is one culpably implicated in the commission of a crime of which the defendant is accused; one who knowingly and voluntarily co-operates, aids, or assists in the commission of the crime. Hendrix v. State, 8 Okla. Cr. 530, 129 Pac. 78, 43 L. R. A. (N. S.) 546; Baldock v. State, 16 Okla. Cr. 203, 182 Pac. 265.

Whether or not Mrs. Gregory, under the testimony here, was an accomplice, and whether or not she was acting under duress, were questions of fact for the jury. The jury may have concluded, under the instructions given by the court, that Mrs. Gregory was or was not an accomplice. If the part taken by Mrs. Gregory in these transactions was done under duress of her husband, there was no culpable, criminal intent on her part. In that case she would be neither a principal nor an accomplice. Section 2099, R. L. 1910, provides as follows:

"A subjection sufficient to excuse from punishment may be inferred in favor of a wife from the fact of coverture whenever she committed the act charged in the presence and with the assent of her husband," etc., excepting certain crimes among which this is not included.

The jury, under the provisions of the statutes, would be justified in drawing an inference that Mrs. Gregory acted under duress of her husband, and was not an accomplice. But this is a rebuttable inference. These issues should have been submitted to the jury under appropriate instructions.

On the contrary, Tidwell, without doubt, as a matter of law, was an accomplice. Indeed, he was admitted by both parties to be the chief actor and author of the conspiracy, and it was error for the court, over the objections of the defendant, to submit that as an issue of fact to the jury. Where the evidence is conflicting as to whether or not a witness participated in committing the offense charged, the question as to whether or not such witness is an accomplice is one of fact for the jury, but where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice. Moore v. State, 14 Okla. Cr. 292, 170 Pac. 519.

The defendant requested the following instruction, which was refused:

"The court instructs the jury that under the law you cannot convict the defendant upon the testimony of an accomplice, unless their testimony has been corroborated by some person who is not an accomplice to the commission of the crime, and you are instructed that witness Bill Tidwell, under his testimony, is an accomplice, and you are instructed that the witness, Mrs. Ernest Gregory, under her testimony, is an accomplice, and you are further instructed that their testimony has not been sufficiently corroborated to base a verdict of guilty, and you are therefore instructed to find the defendant not guilty."

The law embodied in the instruction requested was nowhere covered in the instructions given by the court. This instruction as requested was faulty, because of the fact that it included Mrs. Gregory as well as Tidwell, and amounted to a peremptory instruction for the defendant. However, it was sufficient to call the court's attention to the fact that, where the evidence showing that persons are accomplices is undisputed, the issue is one of law, and not of fact. Cudjoe v. State, 12 Okla. Cr. 246, 154 Pac. 500, L. R. A. 1916F, 1251.

The only instruction given by the court touching upon the competency of evidence given by accomplices was instruction No. 7, as follows:

"You are further instructed that an accomplice is a person involved either directly or indirectly in the commission of a crime. To render a person an accomplice he must in some manner aid or assist or participate in the criminal act, and by that connection he becomes equally involved in such offense. You are further instructed that a conviction cannot be had upon the testimony of an accomplice unless he or they be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof; but you are further instructed that it is not necessary that the corroborating evidence go so far as to establish by itself and without the aid of the testimony of an accomplice or accomplices that the defendant committed the crime as charged. And if there be sufficient corroborating evidence outside of that given by the accomplice or accomplices which, when considered, together with that the testimony of such accomplice will justify, satisfy the minds of the jury of the guilt of the defendant beyond a reasonable doubt, then the guilt of the defendant is sufficiently established."

This instruction was duly excepted to by defendant.

After the verdict was rendered, the defendant filed a motion for a new trial. This motion was supported by the affidavit of Milton Spears, who pleaded guilty and was sentenced to the penitentiary for participating in this crime. In this affidavit Spears says that he and Tidwell rode two bay horses that they stole from a pasture about a mile south of Ernest Gregory's house, and that Calvin McKinney did not furnish any horses, saddles, or guns; that the gun or Winchester said to belong to McKinney was stolen from a man who lived near the old No. 2 mine at Hartshorne; that he (Milton Spears) stole one of the saddles and Bill Tidwell stole the other one. This ex parte affidavit may be entitled to but little weight; it nevertheless confirms the theory of the defendant, to some extent, as shown by the testimony in this record.

It is not sufficient corroboration to merely connect a defendant with the accomplice in the crime. The evidence, independent of the testimony of the accomplice, must tend to connect the defendant with the crime itself, and not simply with the perpetrators. State v. Wilks, 17 Okla. Cr. 247, 187 Pac. 813.

Independent of the testimony of Tidwell, there is no evidence of a convincing character that the defendant had anything to do with this robbery. If the jury believed that Mrs. Gregory was an accomplice, we think the corroboration of Tidwell by Mrs. Gregory, after the two conferences in the penitentiary, was of doubtful probative value. Excepting the testimony of Tidwell and Mrs. Gregory, every independent circumstance shown is entirely consistent with the innocence of the defendant.

For the error of the court in failing to instruct the jury, as a matter of law, that Tidwell was an accomplice, and for

failing to give appropriate instructions as to whether or not Mrs. Gregory was an accomplice, this case is reversed and remanded.

DOYLE, P. J., and MATSON, J., concur.