## PETER JOSEPH O'DONNELL et ux. v. STATE.

No. A-9872.    Sept. 17, 1941.

(117 P. 2d 139.)

Peter Joseph O'Donnell and Florence Nightengale O'Donnell were convicted of robbery with firearms, and they appeal. Judgment affirmed as to Peter Joseph O'Donnell, and judgment reversed and cause remanded as to Florence Nightengale O'Donnell.

Willis R. Stark, of Oklahoma City, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Lewis R. Morris, Co. Atty., of Oklahoma City, for the State.

BAREFOOT, P. J. Defendants, Peter Joseph O'-Donnell and Florence Nightengale O'Donnell, were jointly charged in the district court of Oklahoma county with the crime of robbery with firearms; were tried, convicted, and the defendant Peter Joseph O'Donnell was sentenced by the court to serve a term of 35 years in the penitentiary and defendant Florence Nightengale O'Donnell was sentenced to serve 20 years in the penitentiary, and they have appealed. As these defendants were unable to give bond pending appeal and are now confined in the penitentiary at McAlester, their cases have been advanced and decided at this time. The defendants were husband and wife and were jointly charged with their son, Thomas William Hugart.

The only questions presented on this appeal are: First, that the court erred in refusing to sustain a demurrer to the evidence as against the defendant Florence Nightengale O'Donnell for the reason that the evidence was insufficient to sustain a conviction as against her; and, second, that the sentence of 35 years imposed against the defendant Peter Joseph O'Donnell is excessive and should by this court be reduced. The first contention is based upon the question of coverture, in the absence of proof that she participated, or aided and abetted in the commission of the offense. To properly consider these ques-

tions it will be necessary to briefly review the evidence as revealed by the record.

The defendants resided in St. Louis, Mo. They left there some time prior to May 10, 1939, with the son of Florence Nightengale O'Donnell, Thomas William Hugart, who was 17 years of age, and were traveling in a 1934 Terraplane automobile bearing a Missouri tag. They ostensibly were coming to Vinita, Okla., or Denison, Tex., for the purpose of defendant Peter Joseph O'Donnell's securing work upon one of the dams that was being constructed, he being an iron worker. They, however, visited quite a number of towns and cities in Texas and Oklahoma, and arrived in Oklahoma City on the evening of the 9th of May, 1939. They camped that night at Rotary Park. Next morning they were driving over the city, all three being in the car. The car was parked near a grocery store and church about a block from the substation of the Oklahoma Natural Gas Company in Capitol Hill. The defendant Florence Nightengale O'Donnell remained in the car and the defendant Peter Joseph O'Donnell and his stepson, Thomas William Hugart, immediately went to the substation of the Oklahoma Natural Gas Company. Charles C. Masters and J. B. Smith, employees of the company, were on duty there behind the counter in said building. Upon entering young Hugart demanded of them that they "Get them up." The defendant Peter Joseph O'Donnell was in the rear and held in his hand a pistol which was pointed in the direction of the employees. They went behind the counter and young Hugart directed the two employees to enter a store room in the rear of the building, and he there tied their hands behind them with wire which was furnished by the defendant Peter Joseph O'Donnell. They ordered the employees to lie on the floor. They then proceeded to

rob the safe and money drawers of the company and secured, as shown by an audit, the sum of $241.50. They immediately proceeded to where they had left the automobile and entering the same drove west out of the city contacting highway No. 81 and going to El Reno. They stopped at a roadside park, and young Hugart changed clothes there and buried a black box which he had secured at the time of the robbery and which contained only valuable papers belonging to Mr. Masters, one of the employees, and having his name thereon. This box was afterwards recovered by the officers under the direction of young Hugart.

After the party left El Reno going north on United States Highway No. 81, they were intercepted by two state highway patrol officers who had been informed by radio of the robbery and who had a description of the car. They were taken to the police station at El Reno, and there they, their luggage, and their car were searched. The officers found different sums of money at different places. The sum of $17 was found in defendant Peter Joseph O'Donnell's billfold, $71 in defendant Florence Nightengale O'Donnell's purse, $7 in a green colored coat found in the car, $16 found in a man's coat in the car, and $8.52 in silver was found in a compartment of the automobile and in defendant Florence Nightengale O'Donnell's purse. A matron in the Oklahoma City jail found $69 on the person of defendant Florence Nightengale O'Donnell when she was searched there.

Officers from Oklahoma City came to El Reno, and the defendants were taken to Oklahoma City police station. The defendant Peter Joseph O'Donnell rode in the car with one detective and the defendant Florence Nightengale O'Donnell and her son with the other. When they arrived at Oklahoma City and got out of the automobile

young Hugart handed his mother a dirty handkerchief and she placed it in her brassiere. She was afterwards searched by the matron in the city jail and this handkerchief was found to contain $57 in bills.

Some conflicting statements were made by defendants as to where they had been during the past few weeks. The two employees of the Oklahoma Natural Gas Company, Mr. Masters and Mr. Smith, both immediately identified the defendants Peter Joseph O'Donnell and Thomas William Hugart as being the parties who had entered the building and robbed them. They were picked out from five other persons. The defendant Hugart made a written statement to the officers after being told by his stepfather to tell the truth. This defendant, who upon arraignment entered a plea of guilty, afterwards went on the witness stand at the time of the trial and told a quite different story, claiming that he and a man whom they had picked up in Rotary Park on the morning of the robbery had committed the robbery and that the defendant Peter Joseph O'Donnell did not participate therein. This statement was submitted in evidence by the court for the purpose of impeachment of the witness Hugart, and the jury was directed not to consider it for any other purpose.

No instruction was given by the court upon the question of duress by reason of coverture as to the defendant Florence Nightengale O'Donnell, nor was any request made for such instruction. The defendant Peter Joseph O'Donnell represented himself and his wife. The public defender was also present and assisted in the defense of each of these defendants.

The Oklahoma statute with reference to subjection inferred from coverture is Oklahoma Statutes 1931, section 1802, 21 O. S. A., Title 21, § 157, and is as follows:

"A subjection sufficient to excuse from punishment may be inferred in favor of a wife from the fact of coverture whenever she committed the act charged in the presence and with the assent of her husband, except where such act is a participation in:

"1.  Treason;
"2.  Murder;
"3.  Manslaughter;
"4.  Maiming;
"5.  An attempt to kill;
"6.  Rape;
"7.  Abduction;
"8.  Abuse of children;
"9.  Seduction;
"10. Abortion, either upon herself or upon another female;
"11. Concealing the death of an infant, whether her own or that of another;
"12. Fraudulently producing a false child, whether as her own or that of another;
"13. Bigamy;
"14. Incest;
"15. The crime against nature;
"16. Indecent exposure;
"17. Obscene exhibition of books and prints;
"18. Keeping a bawdy or other disorderly house."

It is also provided by Oklahoma Statutes 1931, sections 1801 and 1804, 21 O. S. A., §§ 156 and 159:

"The duress which excuses a person from punishment who has committed a prohibited act or omission must be an actual compulsion by use of force or fear."

"The inference of subjection arising from the fact of coverture may be rebutted by any facts showing that in committing the act charged the wife acted freely."

These statutes have been before this court for construction in many cases. Neff v. State, 29 Okla. Cr. 2, 231 P. 898; Winer v. State, 36 Okla. Cr. 316, 253 P. 1025; Sanders v. State, 48 Okla. Cr. 65, 289 P. 798; Zammer v.

State, 51 Okla. Cr. 125, 300 P. 325; Davis v. State, 53 Okla. Cr. 85, 7 P. 2d 911; Sentell v. State, 61 Okla. Cr. 229, 67 P. 2d 466; Paris v. State, 66 Okla. Cr. 236, 90 P. 2d 1078; Stewart v. State, 71 Okla. Cr. 292, 111 P. 2d 200. See, also, 13 R.C.L. 1238; 71 A.L.R. 1127, Annotation; 19 L.R.A. 357 and 358, Note.

It will be noted that robbery with firearms is not one of the exceptions noted by the statute. These statutes and the rule which they announce are the outgrowth of the rule of the common law that where a crime, with some exceptions, was committed by a married woman conjointly with or in the presence of her husband, prima facie she was not criminally liable, as it was presumed that she acted in obedience to his commands and under his coercion. This doctrine is announced by Blackstone, who says that it is a thousand years old. The cases are not in harmony with reference to the limitations to be placed on the same for the very good reason that some of the states have enacted statutes clearly repudiating the doctrine. Others have not done so and still adhere to the common-law rule. The majority of the courts under statutes that have enlarged the property rights of married women and removed their common-law disabilities to contract have not changed the common-law rule as to their liability for acts committed in the presence of their husbands, but many of the decisions are to the effect that the presumption is slight and may be rebutted by slight circumstances. This is the view adopted by this court in the decisions heretofore cited and sustained by the Oklahoma statutes heretofore quoted.

The question arises, Just what is necessary in each individual case to rebut this presumption? The answer is that the facts in each individual case must be considered to determine whether there has been proof to

overcome the presumption. Therefore, many courts have held that the question of duress by reason of coverture is a question of fact in each individual case, and especially where there is any doubt in the matter, and that this question should be submitted to the jury upon proper instructions. This we believe is the best rule and in harmony with the decisions heretofore cited in this court. In the instant case no instruction was submitted to the jury upon this question. We are not unmindful of the rule which requires a defendant to present a written instruction and that when he fails to do so he cannot complain. We also recall the rule that requires the court to fully instruct the jury upon all the material issues of the trial which the evidence supports.

The defendants in this case had no lawyer of their own, but represented themselves with the assistance of the public defender of this county. Under these circumstances we are of the opinion that the failure to give the same was such a fundamental error as to require a reversal of this case as to the defendant Florence Nightengale O'Donnell. In the case of Sanders v. State, 48 Okla. Cr. 65, 289 P. 798, 799, the court says:

"In the state's brief the Attorney General sums up his conclusions in the following language:

" 'Therefore, in the opinion of the Attorney General, before the jury should have been permitted to have convicted Della Sanders in this case they should have been instructed on the law relative to an inference of duress arising where the wife participated in a robbery "in the presence and with the assent of her husband." '

"In support of this proposition the Attorney General quotes from Collegenia v. State, 9 Okla. Cr. 425, 132 P. 375; Brock v. State, 6 Okla. Cr. [23], 24, 115 P. 1026; McKinney v. State, 20 Okla. Cr. 134, 201 P. 673; Nelson v. State, 34 Okla. Cr. 187, 245 P. 1009. This court agrees

with the Attorney General that the evidence of the state clearly raises the issue of duress by reason of coverture and that the trial court should have instructed on this issue, whether requested to do so or not. Where the issue of duress by reason of coverture is surrounded by doubt and the state's evidence tends to rebut it rather than support it, it would not be error to fail to instruct thereon, especially in the absence of any request therefor. Whether the issues require such an instruction depends upon the evidence in each particular case, and the failure to give such instruction would not be reversible error in every case where a wife committed a crime jointly with her husband, but only where the evidence is clear that the crime was committed, if at all, 'in the presence and with the assent of her husband,' and the crime is not included within the exceptions of section 1516, supra. For the reasons stated, the cause will be reversed and remanded as to the defendant Della Sanders for failure to give an instruction upon the inference of duress because of the wife's participation in the crime 'in the presence and with the assent of her husband.' "

In McKinney v. State, 20 Okla. Cr. 134, 201 P. 673, 676, the court also said:

"Whether or not Mrs. Gregory, under the testimony here, was an accomplice, and whether or not she was acting under duress, were questions of fact for the jury. The jury may have concluded, under the instructions given by the court, that Mrs. Gregory was or was not an accomplice. If the part taken by Mrs. Gregory in these transactions was done under duress of her husband, there was no culpable, criminal, intent on her part. In that case she would be neither a principal nor an accomplice. Section 2099, R. L. 1910, 21 Okla. St. Ann. § 157, provides as follows:

" 'A subjection sufficient to excuse from punishment may be inferred in favor of a wife from the fact of coverture whenever she committed the act charged in the presence and with the assent of her husband,' etc., excepting certain crimes among which this is not included.

"The jury, under the provisions of the statutes, would be justified in drawing an inference that Mrs. Gregory acted under duress of her husband, and was not an accomplice. But this is a rebuttable inference. These issues should have been submitted to the jury under appropriate instructions."

It is also doubtful if the evidence in this case, under the decisions of this court, was sufficient to permit the case to go to the jury against the defendant Florence Nightengale O'Donnell. There is no evidence that she participated in the robbery or that she had any knowledge that a robbery was or had been committed. Her only connection is that she was present in the automobile with her husband and her son and money was found in her possession after the robbery. Under the presumption as defined by the statute that she acted at the direction of her husband, the presumption would be that in having possession of the money she acted under his influence and coercion. In the case of Caldwell v. State, 193 Ind. 237, 137 N.E. 179, 181, a wife was charged with receiving stolen property from her husband. The court says:

"It may be said that where the wife acts voluntarily she ought to be held liable whether her husband was present or not, or if she acted under compulsion she ought to be exempt from punishment, not because of the marital relation, but like any one else acting under such circumstances. However plausible this argument may seem, still the fact remains that the Legislature of this state has never seen fit to change the common law in this respect. Hence, as the common law prevails in this state as to all matters not changed or modified by statute, we hardly think it incumbent upon the court to legislate, when it appears that the modern, as well as the older, authorities sustain the general principle of law that, when a married woman is indicted for a crime (excepting treason or murder) committed in the presence of her husband, the presumption of law arises from the husband's presence that the wife acted under his coercion,

entitling her to a discharge, unless this presumption is rebutted. State v. Harvey, 130 Iowa 394, 106 N.W. 938; State v. O'Neil, 147 Iowa 513, 519, 126 N.W. 454, 33 L.R.A. (N.S.) 788, Ann. Cas. 1912B, 691; State v. Fitzgerald, 49 Iowa, 260, 31 Ann. Rep. 148; Commonwealth v. Daley, 148 Mass. 11, 18 N.E. 579; Commonwealth v. Adams, 186 Mass. 101, 71 N.E. 78; State v. Miller, 162 Mo. 253, 62 S.W. 692, 85 Am. St. Rep. 498; Smith v. Schoene, 67 Mo. App. 604; United States v. Terry (D.C.) 42 F. 317; Davis v. State, 15 Ohio 72, 81, 45 Am. Dec. 559; Uhl v. Commonwealth, 6 Grat. 706 [47 Va. 706]; State v. Nelson, 29 Me. 329; State v. Houston, 29 S.C. 108, 6 S.E. 943; 2 Chamberlayne, Modern Evidence, § 1119; 2 Whart. Ev. (2d Ed.) § 1256; 1 Greanleaf, Ev. (Lewis' Ed.) § 28; 3 Greanleaf, Ev. (Lewis' Ed.) § 7; 3 Elliott, Ev. § 2253; 1 Taylor, Ev. (9th Ed.) § 190; Reynolds, Trial Ev. p. 169.

"In Commonwealth v. Daley, supra, 148 Mass. 13, 18 N.E. 579, it is said:

" 'No exact rule applicable to all cases can be laid down as to what degree of proximity will constitute such presence, because this may vary with the varying circumstances of particular cases. And where the wife did not act in the direct presence of her husband or under his eye, it must usually be left to the jury to determine incidentally whether his presence was sufficiently immediate or direct to raise the presumption. But the ultimate question, after all, is whether she acted under his coercion or control, or of her own free will independently of any coercion or control by him; and this is to be determined in view of the presumption arising from his presence, and of the testimony or circumstances tending to rebut it, if any such exist.'

"Taylor on Evidence, supra, asserts that—

" 'It seems that a married woman cannot be convicted under any circumstances as a receiver of stolen goods, when the property has been taken by her husband and given to her by him.' "

The facts in this case are somewhat similar to the facts in the instant case. However, we are going to reverse and remand this case as to the defendant Florence Nightengale O'Donnell, with directions to the county attorney of Oklahoma county to take such action as he deems advisable as to the further disposition of the same.

As to the contention that the judgment and sentence of 35 years in the penitentiary assessed against the defendant Peter Joseph O'Donnell is excessive, we have carefully examined the record, and find no reason for the modification of this sentence. The defendant's conduct in the trial of this case showed much familiarity with courtroom procedure. He not only committed a daylight robbery in the business district of a large city, but he did so at the point of a gun, and with the assistance of his young stepson, whom he had no doubt influenced to participate therein. After the robbery had been committed, he evidently induced his wife and young stepson to go upon the witness stand and testify falsely that he did not participate in the robbery. Under this statement of facts, and in view of the statute, under which defendant was charged, which provided for a punishment of death by electrocution or by a punishment of life imprisonment, we cannot say that the court was not justified in sentencing this defendant to a period of 35 years in the penitentiary.

It is therefore ordered that the judgment and sentence of the district court of Oklahoma county be reversed and remanded as to the defendant Florence Nightengale O'Donnell, with directions to the warden of the penitentiary at McAlester to immediately deliver said defendant to the sheriff of Oklahoma county, with directions to the county attorney to take such action as he deems advisable, and that the judgment and sentence of the district

court of Oklahoma county, as to the defendant Peter Joseph 'O'Donnell be affirmed.

JONES, J., concurs. DOYLE, J., absent.