Jimmy GOODWIN and Betty Goodwin,
Appellants,

v.

STATE of Oklahoma, Appellee.

No. A–17082.

Court of Criminal Appeals of Oklahoma.

Jan. 31, 1973.

## 572

Judd L. Black, Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., Paul Crowe, Asst. Dist. Atty., for appellee.

## OPINION

BRETT, Judge:

Appellants, Jimmy Goodwin and Betty Goodwin, hereinafter referred to as defendants, were convicted in the District Court of Hughes County Case No. CRF 69–68, of burglary in the second degree. Jimmy Goodwin was sentenced to four years imprisonment and Betty Goodwin was sentenced to two years imprisonment. Judgment and sentence was imposed on May 14, 1971, and this appeal perfected therefrom.

It was charged by information that the defendants committed the offense of burglary in the second degree on November 17, 1969, in that while acting conjointly they did break and enter the Kilgore Liquor Store in Wetumka, Oklahoma, without the consent of the owner, and with the intent to steal therefrom. Three witnesses testified at the trial that the Kilgore Liquor Store had been forcefully entered on the late evening of November 16th, or early morning November 17, 1969. Several broken bottles of liquor were found on the floor, and after an inventory, it was determined that a quantity of liquor had been stolen. The owner of the store, Cecil Kilgore, testified that the store had been entered and the liquor taken without his permission or consent.

Judy Carter testified that on November 16, 1969, she was with Betty Goodwin at approximately 10:30 P.M. when they picked up Jimmy Stinson and the Defendant Jimmy Goodwin. The foursome then went to another location where Jimmy Stinson borrowed a pickup truck. Once in the pickup, the foursome then drove to Wetumka. Mrs. Carter testified that after visiting a cafe the foursome drove to the liquor store where the Defendant Jimmy Goodwin and Jimmy Stinson got out. Mrs. Carter and Defendant Betty Goodwin then drove back to the cafe, but later returned to a location near the liquor store. According to Mrs. Carter, Jimmy Goodwin came over to the pickup and asked the women to come help them. Once behind the liquor store, they found some boxes of liquor which were carried away and placed in the pickup by Stinson, and Defendants Jimmy and Betty Goodwin. The foursome then left Wetumka and drove in the pickup to the Goodwin's cafe in Francis, Oklahoma.

Undersheriff Sliger testified that in response to a call on the morning of November 17, 1969, at approximately 6:30 A. M., he observed a Ford pickup with the license tag 378–000 parked in front of the Francis Cafe. Officer Sliger observed the vehicle for approximately 30 minutes, during which there was some activity around the pickup, before someone got into the pickup and drove it away. Officer Sliger followed the pickup and observed that it stopped in front óf the Goodwin residence where Jimmy and Betty Goodwin got out. According to Officer Sliger, Betty Goodwin took a fifth of whiskey from the front seat of the vehicle into the house.

It is defendants' first contention that the trial court erred in allowing the witness, Judy Carter, to give evidence indicating that the defendants had committed another offense unrelated to the one for which they were on trial. The relevant portion of the testimony indicates that prior to the burglary of the liquor store, Judy Carter and Betty Goodwin were waiting for Jimmy Goodwin and Jimmy Stinson. The prosecutor then questioned Mrs. Carter as follows:

"Q. All right then then what did the four of you do then?

"A.  Well, we got in the pickup and (interrupted)

"Q.  Speak up louder.

"A.  We got in the pickup and drove around and we went out into the country and they had some stolen stuff and they went (interrupted)

"BY MR. KEEL: [defense attorney] We object, Your Honor.

"BY THE COURT: Mr. Melson, [prosecutor] will you and Mr. Keel approach the bench, please?"

At this point the defense counsel asked for a mistrial, which was overruled by the court. Defense counsel then asked that the witness and the jury be admonished. The court did so thusly:

"BY THE COURT: The Court admonishes the witness, at this time, not to testify as to any other crimes other than the crime charged in this case, being the Kilgore Liquor Store. The Court further admonishes the jury not to consider any testimony given by this witness pertaining to any other crimes, other than the crimes charged in the information, which was presented to you by the District Attorney, being the crime of burglarizing the Kilgore Liquor Store.

■ The defendant is of course correct, as an abstract statement of law, that evidence of other offenses by a defendant unrelated to the one for which he is on trial is inadmissible. English v. State, Okl.Cr., 480 P.2d 279 (1971). However, the witness' inadvertent reference to "some stolen stuff" was not elicited by the prosecutor. We are of the opinion that this remark by the witness was not of such a serious nature as to impress the jury with the fact that the defendant had committed another offense. Finally, we are satisfied that the court's immediate admonition to the jury that it not consider evidence of other offenses or activities, cured any defects. Accordingly, we find that the de-

fendant was not prejudiced to the degree that reversal is required.

The defendant next complains that the trial court erred in submitting the issue to the jury as to whether Judy Carter was an accomplice without any definition or instruction as to what would constitute an accomplice; and further in failing to instruct the jury was to the law concerning the testimony of an accomplice. In this regard the defendant is mistaken since a review of the record shows that the trial court fully instructed the jury as to what constitutes an accomplice; that an accomplice's testimony must be corroborated before a conviction can be had; and as to the degree of corroborating evidence necessary to convict. We are of the opinion that the court's instructions in this regard were accurate and fully covered the issue.

■ It is defendants' third contention that the trial court erred in overruling the demurrer to Betty Goodwin, since defendant argues, the evidence established subjection under coverture, which excuses her from punishment. It is true in Oklahoma that the involuntary subjection to the power of a superior, which exonerates a person charged with a criminal act from punishment, arises from coverture. 21 O.S. 1971, § 155. A subjection sufficient to excuse from punishment may be inferred in favor of a wife from the fact of coverture whenever she committed the act charged in the presence and with the assent of her husband. 21 O.S.1971, § 157. However, "the presumption is slight and may be rebutted by slight circumstances" and "this question should be submitted to the jury upon proper instructions." O'Donnell v. State, 73 Okl.Cr. 1, 117 P.2d 139 (1941). Where "it is apparent from all the evidence that the wife was not under any subjection, but acted freely, the inference of subjection arising from the fact of coverture is rebutted." Doyle v. State, Okl. Cr., 317 P.2d 289 (1957).

■ In the instant case the claim that the defendants, Betty Goodwin and Jimmy Goodwin, were husband and wife, was not

proven as an undisputed fact by the evidence. Neither defendant testified and no defense witnesses were called. The only indication of the husband and wife relationship came during the cross-examination by defense counsel of the witness Judy Carter. Defense counsel inquired: "Are they husband and wife?" Mrs. Carter replied: "I think so. I'm not for sure about that either." This is hardly proof positive that the defendants were husband and wife. If the Defendant Betty Goodwin had sought to rely upon such a defense, she should have offered proof that she was married to Jimmy Goodwin.

Furthermore, even assuming that the defendants were married, we are of the opinion that the inference of subjection arising from coverture was rebutted by the facts showing that Betty Goodwin acted freely and of her own volition. It is to be remembered that the presumption of subjection arising from coverture is slight and may be rebutted by slight circumstances. Thus, we do not find that Betty Goodwin and Jimmy Goodwin were husband and wife; and any inference of subjection arising from coverture was rebutted.

Defendants' next contend that the verdict of the jury was obscure, unintelligible, and not in accordance with the requirements of law. Defendants refer to that portion of the verdict where, after finding the defendants guilty as charged, the jury declined to assess punishment, and the notation was made on the verdict form: "Leave punishment to the court." We find nothing so obscure or unintelligible about this verdict to render it invalid. Under Oklahoma law, when a jury renders a verdict of guilty and fails to agree on the punishment to be inflicted, "or do not declare such punishment by their verdict," the trial court shall assess the punishment and render judgment accordingly. 22 O.S.1971, § 927.

Lastly, defendants contend that it was error for the trial court to give oral instructions to the jury after the jury had begun its deliberations. Unquestionably, our statutes contemplate that all instructions to the jury shall be in writing, including any material changes or modifications made during deliberations of the jury. 22 O.S.1971, § 831, § 894. However, this Court has held that "If oral explanations by the court are made which do not materially alter the written instructions, and which have no tendency to confuse the jury, the verdict should not be disturbed." Young v. State, Okl.Cr., 357 P.2d 562, 564 (1960).

In the instant case, after the jury had begun its deliberations, the foreman of the jury made an inquiry of the trial judge. Thereupon the trial judge, in the presence of defense counsel and the prosecuting attorney, orally advised that the jury should first determine whether the defendants were guilty as charged, and if it found them guilty, they were to assess the punishment, but if the jury was unable to agree on the punishment, the punishment could be left to the court. At the time this transpired defense counsel entered no objection. This court's oral explanation was in the presence of counsel from both sides, and no objection was entered by either counsel, and since we find no prejudice therefrom which inured to the defendant, we find no error. "While ordinarily we do not mean to approve of the giving of oral explanations of written instructions pending the deliberations of the jury, yet under the circumstances here, where there were no specific objections to the giving of oral explanations, and where the explanations given did not amount to a material modification of the written instructions, the irregularity will be considered as waived." Bird v. State, 22 Okl.Cr. 263, 210 P. 925 (1922). Accordingly, we find no reversible error in this regard.

Therefore, having considered defendants' assignments of error, and finding them to be without merit, we conclude that the judgment and sentence should be and the same is hereby affirmed.

BLISS, P. J., and BUSSEY, J., concur.