Jack Marvin **ALLEN**, Appellant,

v.

The **STATE** of Oklahoma,
Appellee.

No. F–74–79.

Court of Criminal Appeals of Oklahoma.

April 29, 1974.

**244**

Duke Halley of Hieronymus & Hodgden, Woodward, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge.

Appellant, Jack Marvin Allen, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Dewey County, Case No. CRF–73–5, for the crime of Larceny of a Domestic Animal; his punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At trial the evidence reflected that at approximately 4:00 on the afternoon of February 16, 1973, an 800 pound Hereford cow with calf, belonging to a Raymond Moore, was illegally slaughtered in a field southeast of Taloga. The site where the remains were located is visible from the road. Plaster casts of tire marks made at the site and in the vicinity were identified as being from the defendant's truck, scrapings from defendant's truck bed contained beef hair and scrapings made from his steering column contained blood, but the origin was not determined.

Gary Sanders testified that on the day in question he observed a blue, or bluish-green, Chevrolet pickup in the location in question which he referred to as the Stidham Ranch. He further testified that he saw no persons in or about the pickup.

Lutz Whitebird testified for the State, that on the day in question, the defendant had suggested to him that they "get a beef," that they then met in Seiling and drove to the pasture southeast of Taloga in defendant's pickup truck. He further testified that the defendant shot and butchered the animal and that during the butchering both men had laid on the ground when they saw Mr. Sanders' truck go by. Mr. Whitebird stated that he did not want to go to McAlester and that he understood that in return for his testimony, he would receive a suspended sentence and would not be sent to the penitentiary. He further admitted previous convictions for Public Drunk. He testified that he was familiar with the area in question in that he had previously worked for Mr. Stidham in that vicinity and the defendant was aware of this fact. Mr. Whitebird testified that the defendant had knowledge of at least one occasion when he (Whitebird) had damaged Mr. Stidham's pickup while in possession of it, and that the defendant also had knowledge that on at least one occasion the witness had received a beef in that area by "working it out."

Wilda Allen, defendant's wife, testified that she and defendant have five children, and that on the day in question Lutz Whitebird had come to their home and that she heard him tell her husband that he had a cow "worked out" from Mr. Stidham and that he wanted to borrow her husband's pickup truck to go and get it. She stated that she told her husband not to let Lutz have the pickup because they both knew of the damage he had done to Mr. Stidham's pickup; that the two men then left the house in the pickup; that Mr. Whitebird was driving, and that they returned with the beef which she understood to be the property of Mr. Whitebird.

The defendant testified that on the day in question, Lutz Whitebird had come to his home and asked to borrow his pickup for the purpose of picking up a beef he had "worked out" for Mr. Stidham. The defendant stated that he was aware that Mr. Whitebird and Mr. Stidham had made this type of arrangement on a previous occasion. On the advice of his wife, he refused because Lutz had damaged Mr. Stidham's pickup, but when Mr. Whitebird offered him half the beef, he decided to let him use the truck, but to go with him. He stated that Mr. Whitebird drove, as he was not familiar with the area. He related that shortly before the date in question he had had surgery on his right arm and on

the 16th day of February, he still did not have full use of the arm. He stated that although he shot the animal, he had used both hands to hold the gun and that Lutz Whitebird had done all the butchering and loading while he stayed in the truck, on the passenger side. He stated that he observed Mr. Sanders' truck go by and that he did not know whether Lutz Whitebird had laid down or not, but that he just stayed in the truck. Defendant stated that he drove home because when Whitebird got in the truck, he was all bloody and he did not want him to get blood on the steering wheel. He further stated that on the next day he swept out the truck and did not attempt to wash it. The defendant admitted to two previous felony convictions, both for burglary, second degree, one occurring in California and one in Oklahoma, 18 years ago.

██ Defendant's first proposition of error concerns the sufficiency and clarity of the verdict returned by the jury. He contends that the length of time the jury intended him to serve is not ascertainable with certainty from the verdict which reads, "We, the jury, . . . do . . . find the defendant Guilty of Larceny of Domestic Animals and fix his punishment at Maximum of 10 years." Defendant argues that this language is vague and indefinite and that it forces speculation as to the jury's intention, thereby denying him of his right to know, with certainty the punishment imposed. We do not agree. The jury was advised that defendant could be sentenced to a term of imprisonment ranging from three years to a maximum of ten years, and we are of the opinion that the verdict clearly reflects that the jury's intention was to impose the maximum sentence, provided by law, ten years.

██ The defendant cites the case of Smith v. State, 83 Okl.Cr. 392, 177 P.2d 523 (1947), in support of his argument, but in that case the verdict was wholly unintelligible, reading that punishment was assessed at " . . . for seven (7)."

Such a situation is not presented by this verdict which is definite and understandable. Additionally if the defendant had felt the verdict was irregular or indefinite, he should have objected at the time of its return, thereby giving the court an opportunity to have the jury correct any confusion. Absent such objection, the reviewing court will indulge every intendment and effort to uphold the verdict, and where, from an examination of the verdict and entire record, the intention and purpose of the jury can be ascertained, it will be upheld. Smith v. State, id.

██ Defendant next complains that the court's refusal to instruct the jury that Mr. Whitebird was an accomplice as a matter of law, prejudiced him in that the jury was left free to decide for themselves the question of his status, and the consequent competency of his testimony. We must agree with this argument. A long line of cases decided by this Court have consistently held that when a witness is clearly shown to be an accomplice, the issue is one of law and the court should instruct the jury that the witness is an accomplice as a matter of law and his testimony must, therefore, be corroborated. See Williams v. State, Okl.Cr., 518 P.2d 322 (1974); Fritts v. State, Okl.Cr., 487 P.2d 1188 (1971); and McKinney v. State, 20 Okl.Cr. 134, 201 P. 673 (1921). Although we do agree with the defendant that the trial court should have instructed the jury that as a matter of law Lutz Whitebird was an accomplice and that his testimony must be corroborated or the defendant acquitted, we cannot reach the conclusion urged by defendant that this failure resulted in such fundamental error as to require reversal. Certainly, there was abundant corroboration presented, including the defendant's own testimony. The verdict of the jury could reasonably have been based upon the competent evidence which was presented, independent of Mr. Whitebird's testimony. Because the defendant was in no way prejudiced by the failure to give this instruction, the error

complained of falls within the rule provided for by 20 O.S.Supp.1971, § 3001:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless it be the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

■ Defendant further contends that the court erred by refusing to give the jury the requested cautionary instruction as to the credibility of an accomplice. In support of his position, he cites cases supporting this position, exemplified by the Oklahoma decision of Smith v. State, Okl. Cr., 485 P.2d 771 (1971). These cases are clearly distinguishable on the facts involved. The cautionary instructions discussed there are explicitly limited to those occasions when statements made by an accomplice or informer are uncorroborated. While this requirement is, of course, necessary with uncorroborated testimony, the record in the instant case reveals such sufficient corroboration that the cautionary instruction is not necessary.

■ Likewise, defendant's argument that the court's instructions 6 and 8 did not adequately advise the jury of the law applicable to the case and sufficiently set out the defendant's theory of defense, is without merit. We have carefully reviewed the instructions in their entirety and are of the opinion that, except as to the legal status of Lutz Whitebird as discussed above, defendant was properly charged by the trial court. As this Court has often stated, when the instructions, considered as a whole, fairly and correctly state the law applicable to the case, they will be considered sufficient to meet the requirements of the law. Lefthand v. State, Okl.Cr., 398 P.2d 98 (1965).

■ Defendant lastly complains that the sentence imposed was excessive and further that by comparison with punishments imposed in the other two cases at trial, during that jury term, it is apparent that defendant's long sentence was the result of evidence received outside of trial. Defendant offers no evidence to this Court which supports his speculation, nor does he cite any authority for this proposition. Contentions of error must be supported by authority, as well as argument, and when they are not so supported, this Court will not search the books for authorities to support mere assertion of error. See Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969). The sentence was within the guidelines provided by 21 O.S. § 1716, which provides for imprisonment for not less than three (3) years, nor more than ten (10) years. Defendant's sentence was therefore, within the boundaries established by the Legislature of this State for punishment of those persons who commit the offense of Larceny of Domestic Animals.

For the above and foregoing reasons, it is our opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BLISS, P. J. and BRETT, J., specially concurring.

BLISS, Presiding Judge (specially concurring):

Although the trial court should have instructed the jury that the State's witness, Lutz Whitebird, was an accomplice under his own testimony, the trial court did in fact in its Instruction No. 5 instruct the jury that a conviction could not be had upon the uncorroborated testimony of an accomplice and defined an accomplice. The Instruction was proper and no objection was made. The jury in its deliberation had been properly advised concerning the testimony of an accomplice.

BRETT, Judge (specially concurring):

While I agree that the question of fact was for the jury to decide, concerning who

might have been the primary in this crime, I believe the sentence should be modified. Where there is admitted error in the record, as in this case, I believe the maximum sentence should not be imposed.