Steve Neko STEWARD, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–215.

Court of Criminal Appeals of Oklahoma.

Sept. 13, 1976.

Richard A. Hoffman, Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark El-kouri, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Steve Neko Steward, herein-after referred to as defendant was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–75–550, for the offense of Arson in the First Degree in violation of 21 O.S.1971, § 1401.

His punishment was fixed at five (5) years' imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, C. A. Parker, District Chief of the Tulsa Fire Department, testified that on May 13, 1975, he answered a fire alarm at 1363 East 36th Street at approximately 12:47 a. m. He observed a fire in a four bedroom apartment with "deep black smoke, high intensive heat and highly concentrated." He testified that in his opinion the characteristics of the fire indicated that it was an incendiary fire. A subsequent investigation revealed that there were two fires; one upstairs and one downstairs. He identified certain photographs of the scene of the fire.

Loren Sunday testified that he was a Fire Investigator for the Fire Marshal of Tulsa, and made a follow-up investigation of the fire at 1363 East 36th Street. He testified that there was evidence of definite burning at two separate locations; one in the living room and one in the upstairs bedroom. Each fire in his opinion was caused by the ignition of a flammable liquid.

Brenda Kay White testified that on March 13, 1975 she had occasion to be in Louise Brown's apartment several times. At approximately 8:15 p. m., defendant, co-defendant Theopolis Puckett and Daryl Doe came to Louise's apartment. The defendant and co-defendant Puckett left the apartment at about 9:30 p. m. Upon their return she overheard defendant and Puckett, discussing the fact that he had beat "somebody out of ninety-seven cents about some gas or something." [Tr. 40.] Later around 10:30 p. m., the defendant and Larry Asberry went after some Ariba wine. She left Louise's apartment at approximately 11:00 p. m. Sometime after 12:00 p. m. she heard a popping sound and observed the fire. She testified that defendant and Louise Brown came to her apartment at approximately 30 minutes after the

fire was extinguished. She asked defendant about the fire and he stated "I did it." [Tr. 45] The party stipulated that if Pearline Adams were called to testify she would testify that she resided in an apartment at 1363 East 36th Street North in the City of Tulsa on March 13, 1975, and was forced to leave her apartment because of the fire.

Detective William Latimer testified that he was assigned to the investigation of a fire at the residence of Pearline Adams; that on March 14, 1975 he interrogated the defendant at the Tulsa Police Station. He advised the defendant of his Miranda rights prior to the interrogation. The defendant responded that he could not read or write but acknowledged understanding and waived his rights by placing an "X" on the Rights Waiver. The defendant thereupon stated that on the evening in question he obtained fifty seven (57) cents worth of gas in a yellow plastic container. He went back to 3717 North Quaker and drank more wine and took some pills. He thereafter went to the front of Pearline Adams' apartment and threw a fire bomb through the front window.

Larry Asberry testified that he was presently in jail, charged with Arson; that on the evening in question he was at Louise Brown's apartment with defendant, co-defendant Puckett, and several others. The defendant left the apartment and returned with a yellow plastic bottle. He testified that at approximately 12:00 p. m., he, Ray Stevens, defendant, co-defendant Puckett, and Daryl Doe left Louise Brown's apartment to bomb Ed Adams' apartment. The defendant carried a bomb made of a half-gallon Ariba wine bottle and co-defendant Puckett carried a shotgun. When they arrived at the apartment complex, he and Ray Stevens went to the back. He walked around to the front to see "which apartment it was" and discovered that the apartment was burning. The defendant and Daryl Doe were standing in front of the apartment. He threw his bomb in the mud and ran.

Officer Ronald W. Ellis testified that he investigated the scene of the fire and took photographs both of the exterior and interior of the apartment. He found a Prestone antifreeze container about six feet south of the apartment which smelled of gasoline.

Detective Charles W. Sasser testified that he interrogated co-defendant Theopolis Puckett concerning the Adams fire. Puckett stated that he heard conversations on the afternoon of March 12th, concerning a fire bombing of the Adams' apartment. Later that evening, he observed a fire bomb sitting on a table; that one of the participants asked him to carry a shotgun.

For the defense, Louise Brown testified that she was at her apartment on the morning following the fire and did not hear a conversation between Brenda White and co-defendant Puckett.

Officer David Harrison testified that he was present during the interrogation of defendant at the Police Station. He testified that he did not specifically remember but thought that the defendant signed his name to the Rights Waiver.

■ The first assignment of error is that the trial court erred by not granting a mistrial when the subjects excluded by the defendant's motion in limine were brought before the court. The record reflects that during the direct examination of District Chief Parker the following transpired:

"A. This is the front of the complex. This is the doorway entrance, you can see through the back bar through the front of the building to the rear, I mean, to the rear of the building instead of the front.

"Q. Okay.

"A. This is the door upon my arrival I tried to get through and couldn't so I go around the complex and entered from the back side until the fire was knocked down where we could get in.

"Q. Okay. I'll hand you what has been marked for identification purposes as State's Exhibit 1C, ask if you can identify that?

"A. Yes sir. This is the upstairs bedroom. This bed was back in the corner. It was not the bed that we throwed the mattress out of, where the little girl was suppose to have been sleeping.

"MR. EARL: Objection, ask that be stricken.

"BY THE COURT: Sustained.

"MR. EARL: Ask that the jury be admonished not to consider and move for mistrial.

"BY THE COURT: The objection will be sustained and the jury will be admonished to disregard that portion of the testimony. Request for mistrial is denied. [Tr. 11]

It is readily apparent that the response was not elicited by the Assistant District Attorney but rather was a spontaneous explanation in regard to the picture he was identifying for the jury. Dealing with a similar assignment of error in *Goodwin v. State*, Okl.Cr., 506 P.2d 571 (1973) we stated:

"However, the witness' inadvertent reference to 'some stolen stuff' was not elicieted by the prosecutor. We are of the opinion that this remark by the witness was not of such a serious nature as to impress the jury with the fact that the defendant had committed another offense. Finally, we are satisfied that the court's immediate admonition to the jury that it not consider evidence of other offenses or activities, cured any defects. Accordingly, we find that the defendant was not prejudiced to the degree that reversal is required."

■ In the defendant's second assignment of error, he contends that the District Attorney erred by not properly informing his witnesses concerning those subjects not to be discussed during direct examination. The defendant again complains of the testimony of Chief Parker specified in assignment of error No. 1. Inasmuch as we have previously found assignment No. 1 to be without merit, we likewise find this assignment of error to be without merit.

■ The final assignment of error is that the trial court erred by not granting a mistrial in that the Assistant District Attorney instructed witness Latimer to testify totally as to those parts of his conversations with the defendant that were incriminatory to the defendant alone. We only observe that the defendant was tried jointly with co-defendant Theopolis Puckett. The record clearly reflects that the trial judge and the Assistant District Attorney went to great lengths to abide by the United States Supreme Court's holding in *Bruton v. U. S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), wherein the court stated that in joint trial the evidence of a co-defendant's extra judicial confession implicating the defendant violates the defendant's constitutional right of confrontation. We are of the opinion that had the Assistant District Attorney interrogated Detective Latimer as to those portions of the confession which implicated co-defendant Puckett that the same would have constituted fundamental error. We further observe that the defendant's attorney was given the opportunity by the trial court to cross-examine Officer Latimer as to any of the parties that were involved in the defendant's confession except co-defendant Puckett. [Tr. 120] We therefore find this assignment of error to be without merit.

In conclusion we observe the record is free of any error which would necessitate reversal or justify modification. The judgment and sentence is *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.