Virgil FRITTS, and Delbert Rizley, Plaintiffs in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15493.

Court of Criminal Appeals of Oklahoma.

July 28, 1971.

Rehearing Denied Aug. 26, 1971.

Fred D. Green, Sallisaw, Jack E. Rider, Stilwell, for plaintiffs in error.

Larry Derryberry, Atty. Gen., James L. Gullett, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Virgil Fritts and Delbert Rizley, hereinafter referred to as defendant Fritts and defendant Rizley, were charged, tried, and convicted in the District Court of Adair County of the offense for Robbery with Firearms. Their punishment was fixed at eight (8) years imprisonment, and from said judgments and sentences a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial adduced that on June 22, 1968, the Bunch Store in southern Adair County was robbed. Irvin Barnes testified that he and defendant Fritts had discussed robbing a store the previous week. He testified that he, defendant Fritts, and defendant Rizley went to Oklahoma City on the morning of June 22. He testified that after conducting business in Oklahoma City, buying beer and whiskey, they returned to the vicinity of the Bunch Store, wherein the car driven by the defendant Fritts had a flat tire. He took a gun belonging to defendant Fritts and stated that he would rob the store while Fritts fixed the back tire. Defendant Rizley was in the back seat in an intoxicated condition. Barnes proceeded to the store, wherein he produced the gun and demanded money from the store owner. He returned to the defendant Fritts' car on foot, and they drove to Fritts' residence, wherein the money was divided three ways. At the time of Irvin's testimony at the trial, he was currently serving a prison term for the same robbery. Wendell Mayes testified that he was the operator of the Bunch Store, and that at about approximately 5:20 p. m. on June 22, 1968, Irvin Barnes robbed his store of approximately $175.00. Barnes was wearing a bright, red-orange shirt. Wanda Cato testified that she knew defendant Fritts, defendant Rizley, and Irvin Barnes, and saw all three together on the day in question, and that Irvin Barnes was wearing a bright red-orange shirt. Rex Johnson testified that on the day in question he observed Barnes with defendant Fritts, and defendant Rizley at his service station on the afternoon of June 22, 1968, and that they were in defendant Fritts' red Torino automobile. Bill Christie testified that he observed defendant Fritts and another man in a reddish-orange shirt standing by a 1968 red automobile, about 5:00 o'clock in the afternoon of June 22. The car was parked in the "proximity of the Bunch Store" and had a flat tire. Christie returned on the same road about twenty minutes later, and observed defendant Fritts standing by the red car alone. Donald Jamison testified that he observed defendant Fritts, defendant Rizley, and Irvin Barnes at the Johnson Service Station at approximately 3:00 o'clock p. m. He testified that the latter part of July that defendant Fritts came to his home and asked him if he would forget what he had seen.

A. B. Abernathy, an agent with the State Bureau of Investigation, testified that he talked with defendant Fritts and defendant Rizley; he advised both defendants of their rights against self-incrimination, and both defendants denied being in the company of Irvin Barnes on the day in question. Defendant Fritts testified that on July 22, that he and defendant Rizley went together to Oklahoma City in his red Torino automobile. They arrived in Oklahoma City about 11:30, for the purpose of procuring a beer license for his place of business. They obtained the beer license and went from there to Del City, Oklahoma, where they purchased some liquor, and then proceeded to Checotah, arriving at approximately 2:45 p. m. They stopped at a dairy queen and got a coke for a chaser to drink the whiskey. They then drove to the vicinity of Muskogee, and they had a conversation with a Buck Crum. Upon leaving Muskogee, they had a flat tire in the proximity of the Bunch Store. It took about five to fifteen minutes to fix the tire, and from there, they drove to Vian, Oklahoma. He denied that he was with Barnes at any time on the day in question,

and denied any knowledge of the robbery or receiving a portion of the money taken in said robbery.

Defendant Rizley testified substantially to the same facts as defendant Fritts. He also denied any knowledge of the robbery. Junior Jones, Barney Lewis, and Joe Whitmire all testified that they observed the defendants at approximately 5:00 to 5:15 o'clock at the defendant's tavern in Vian, Oklahoma. An affidavit of Buck Crum, who was unavailable to testify, was introduced without objection, which stated that he observed defendant Rizley and Fritts on the day in question at approximately 4:00 p. m., at a location in the vicinity of Muskogee.

 The first proposition asserts that the trial court erred in overruling defendant's Motion to Quash and set aside the Information at the Preliminary Hearing. Defendants argue that insufficient evidence was presented at the Preliminary Hearing to connect the defendants with the purported crime. We have carefully reviewed the testimony of the Preliminary Hearing and find that the evidence presented therein is identical to that presented at the trial, with the exception that the accomplice, Irvin Barnes, did not testify. The testimony reflected that Wendell Mayes was robbed by a person, whom he identified as Barnes, wearing a red-orange shirt. Testimony further reflected that defendant Fritts was observed in the proximity of the crime with a person wearing a similar red-orange shirt at the approximate time of the crime. Other evidence showed that the two defendants and Barnes were together the afternoon of the offense. Agent Abernathy testified that defendants, on being questioned, denied being with Irvin Barnes on the day of the robbery.

We have consistently held that a Preliminary Hearing is not a trial, and does not require sufficient evidence to convict the defendant, but only to show that a crime was committed, and the probabilities that the defendant may have committed the crime. Capes v. State, Okl.Cr., 450 P.2d 842. We are of the opinion that the evidence presented showed that a crime had been committed, and that there was reason to believe that the defendants committed such.

 Defendants further argue under this proposition that the identification made by Mayes of the accomplice, Irvin Barnes, was tainted, and did not conform to the standards required by Thompson v. State, Okl.Cr., 438 P.2d 287. We are of the opinion that defendants are not the proper parties to raise an objection to Barnes' constitutional rights. Barnes apparently waived any defect in his identification, and entered a plea of guilty to the offense of Robbery. The constitutional rights of Irvin Barnes are personal rights and privileges of Barnes alone, and an attack on Barnes' constitutional rights may not be raised by other defendants. We, therefore, find this proposition to be without merit.

 The second proposition asserts that the court erred in admitting into evidence the testimony of Mayes at both the Preliminary Hearing and the trial concerning a conversation had with Irvin Barnes at the time of the robbery, outside the presence of the defendants. We note that defendants do not support this proposition by citation of cases or authorities. We have consistently held that counsel for defendant must not only assert error, but also support his contention by both argument and citations of authorities, and when this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, the Court of Criminal Appeals will not search books for authorities to support mere assertion that trial court has erred. Sandefur v. State, Okl.Cr., 461 P.2d 954.

We further observe that the conversations between Mayes and Barnes were admissible as part of the res gestae, as an exception to the hearsay rule. Wafers v. State, Okl.Cr., 444 P.2d 825, states:

"Statements, acts and conduct of third persons so closely connected with the

crime as to be part of the res gestae are admissible."

■ The defendant's third proposition asserts that the trial court erred in admitting the testimony of Irwin Barnes for the reason that the same was obtained by coercion. Barnes testified that he did not want to testify at the trial, and agreed to testify only after Agent Abernathy visited with him at the reformatory, and requested him to testify under a purported promise that he would help Barnes make parole. Agent Abernathy testified that he did not make such promise to Barnes. We have previously held that the question whether or not testimony is coerced does not go to the competency of such evidence, but only as to its credibility. We have further held that credibility is within the exclusive province of the jury to determine. Keck v. State, Okl.Cr., 376 P.2d 525. See also Cottrell v. State, Okl.Cr., 458 P.2d 328 and Cawley v. State, 96 Okl.Cr. 53, 248 P.2d 273. We, therefore, find this proposition to be without merit.

The defendant's next two propositions assert that the trial court committed error in overruling the Demurrer to the Evidence at the close of the State's case in chief, and that the trial court erred in refusing defendants an instructed verdict of "not guilty." We note that the defendant does not cite authority, nor argue these propositions in his Brief. This Court has repeatedly held that it is necessary for counsel for defendant not only to assert error, but also to support his contentions by both argument and the citation of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this Court will not search the books for the authorities to support the mere assertion that the trial court has erred. Sandefur v. State, *supra.*

■ The defendant's sixth proposition contends that there was not sufficient evidence to corroborate the testimony of the purported accomplice. We are of the opinion that there was sufficient evidence corroborating the testimony of the accomplice to submit the same to the jury. Barnes testified that he was with the defendants the entire day of the robbery, that he had previously talked with defendant Fritts about robbing a store, that he robbed the store about 5:00 o'clock on the day in question, and thereafter, divided the money with defendants Fritts and Rizley. Wendell Mayes testified that he was robbed on June 22, at approximately 5:20 or 5:30 o'clock by Barnes. Mayes further testified that Barnes was wearing a bright red-orange shirt. Wanda Cato testified that she observed defendants Fritts and Rizley and Barnes at her store about 2:30 o'clock on the day in question, and that they were driving a 1968 red Ford Torino, which belonged to defendant Fritts. She testified that Barnes was wearing a bright reddish-orange shirt. Rex Johnson testified that he observed defendants Fritts and Rizley with Barnes on June 22, at about 3:00 o'clock. Bill Christie testified that at about 5:00 o'clock on the day in question he observed the defendant standing by a 1968 red Ford Torino, which was parked in the vicinity of the store, and that defendant Fritts was fixing a flat tire; another person wearing a bright reddish-orange shirt was standing by the car. He returned past the same location approximately twenty minutes later and observed the defendant Fritts standing along by the car. Donald Lee Jamison testfied that he observed defendant Fritts and defendant Rizley with Barnes in a 1968 red Ford Torino. Agent Abernathy testified that he talked with the defendants Fritts and Rizley on the day of the robbery and that both defendants denied being with Irvin Barnes on June 22, 1968.

In the recent case of Nation v. State, Okl.Cr., 478 P.2d 974, we stated:

"It is the law in this state that an accomplice's testimony need not be corroborated as to every material point. If the accomplice is corroborated as to one material fact, or facts, by independent evidence tending to connect the defendant with the commission of the crime, the

jury may from that infer that he speaks the truth as to all."

We are of the opinion that there was sufficient evidence introduced for the jury to find that the testimony of Irvin Barnes was corroborated, particularly in view of defendant's firm denial of being with Barnes at any time on June 22, 1968.

■ The final proposition asserts that the trial court erred in instructing the jury that Irvin Barnes was an accomplice. This is a novel allegation, in that it would have been reversible error for the trial court to fail to have given such instruction. There is no conflict as to whether Irvin Barnes was an accomplice, in that Barnes testified that he was a participant in the robbery. In the case of McKinney v. State, 20 Okl. Cr. 134, 201 P. 673, we held:

"Where the evidence is conflicting as to whether or not a witness participated in * * * the offense charged, the question as to whether * * * such witness is an accomplice is * * * for the jury; but where the acts and conduct of the witness **are** admitted, it becomes a question of law for the court to say whether or not those acts and facts makes the witness an accomplice."

The trial court properly instructed the jury that Barnes was an accomplice, and further, that the jury could not convict the defendants Fritts and Rizley, unless they found that the testimony of witness Barnes was corroborated by independent evidence. We further observe that the Record reflects that the trial court gave counsel an opportunity to go over the written instructions to be given the jury. Defendant made no objections, nor did he request any additional instructions. In Kidd v. State, Okl.Cr., 462 P.2d 281, we stated that it is the duty of counsel as an officer of the court to aid the court to avoid error by objecting to improper instructions and submitting one to be given. We find no error in the Record which would justify reversal or modification. Judgment and sentence of the trial court is, therefore, affirmed.

BRETT and NIX, JJ., concur.