Doug **VANOSTRUM**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–355.

Court of Criminal Appeals of Oklahoma.

Oct. 7, 1974.

Rehearing Denied Feb. 18, 1975.

Carroll Samara and Lawrence H. Mc-Millin, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David K. Mc-Curdy, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Doug Vanostrum, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–73–775, for the offense of Unlawful Distribution of a Controlled Dangerous Substance. Phencyclidine, in violation of 63 O.S.1971, § 2–401, subd. B, par. 2. The jury fixed his punishment at two (2) years imprisonment and a fine of One Hundred ($100.00) Dollars, and from this judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness at trial was Lucien Jones. His testimony revealed the following facts. He was employed with the Oklahoma City Police Department on September 8, 1972, and his immediate assignment was undercover narcotics. He first met the defendant on October 24,

1972, when he gave the defendant a ride south on May Avenue after he picked up the hitchhiking defendant. He stated that at this time the defendant told him he had numerous drug connections and that if Jones was interested, he should contact him about a crystal amphetamine. He further testified that on November 4, 1972, at about 10:50 p. m., he went to a fish and chip place near Southwest 59th and May, in Oklahoma City, called "Mr. Chips" and that he had gone there for the purpose of seeing an employee of the place, Paul Myers. He said that while he was waiting for Myers, defendant arrived, went in "Mr. Chips" and then came out and went to Paul Myers' car. He approached the defendant at this time and requested him to return inside and tell Myers that he (Jones) was outside waiting for him. The defendant began to inquire as to Jones' purpose in wanting to see Myers, and Jones told the defendant he wanted to see Myers about getting some marihuana from him. The defendant then told Jones that he knew Myers did not have any marihuana, but that he (the defendant) had several connections for marihuana and asked Jones if he was interested in him getting him some. He testified that the defendant then asked Myers if he could use Myers' car for the purpose of finding a lid for Jones. After getting permission, the defendant drove Jones to a bar nearby called "The Round Table." At the defendant's request, Jones went in the bar and asked the barmaid to come out to the car, which she did. At this time the defendant talked to the barmaid out of the hearing of Jones. He then testified the defendant told him that according to the conversation he had with the barmaid, he could not get any marihuana, but that he did know where he could get some PHC. He testified this was a chemical derivative of marihuana.. He stated the defendant then drove him to a house on 64th and South Drexel and asked him to give the defendant $2.00 so the deal would "go down faster." [Tr. 14]. Defendant left the car and went onto the porch and knocked. A young man went

back in the house and reappeared after a moment. The young man then went with the defendant to the car where Jones was sitting. The young man got into the back seat and the defendant got behind the steering wheel. The defendant called the young man "Vince." Vince took a pouch from his pocket and, after checking the contents of one tinfoil packet, he handed another one to Jones, which he described as one dose. He testified the packet contained a white powdery substance and that thereafter he asked Vince if he could come back and purchase more of the drug if he liked it, to which Vince agreed. He then asked the defendant, in the presence of Vince, if he gave Vince the two dollars and the defendant answered in the affirmative. Vince then got out of the car and defendant and Jones returned to the fish and chips place where Jones spoke briefly with Myers and then left. He testified he then went home and labeled the packet he had received from Vince, put it in a state crime envelope and locked it in a cabinet. He said later he gave it to the detectives who affixed the Oklahoma City Police seal, 05038, which was the number which corresponded to the number on the envelope in which Jones had put the packet he had received from Vince.

Ronald W. Clodfelter testified that he was employed as a forensic chemist for the Oklahoma State Bureau of Investigation and had been so employed for two years. He stated that he ran a chemical analysis on the evidence contained under the Oklahoma City Police seal number 05038, and that he found this white powdery substance to be phencyclidine, a dangerous controlled drug under schedule 3 of our narcotics laws. ·

The State then rested, and no evidence was presented on the defendant's behalf.

Vincent Anderson, a co-defendant, was called to testify in his own behalf. He testified that he was not the party involved in the transaction which was the subject of the charge against the defendant. The defense then rested.

The defendant argues one proposition in his appeal as follows:

"The trial court erred in overruling the defendant's demurrer to the evidence because the evidence was insufficient to sustain the conviction and showed that defendant was not an agent of a narcotics peddler but was a conduit or procuring agent for the officer-purchase only."

In support of this proposition the defendant primarily relies upon this Court's decisions in Posey v. State, Okl.Cr., 507 P.2d 576 (1973), and Jones v. State, Okl.Cr., 481 P.2d 169 (1971). In Jones v. State, supra, this Court stated:

"Although by statute in Oklahoma, one who 'aids and abets' is a principal in a crime, a conviction cannot be obtained if there is 'no proof of a conspiracy or prearranged plan' between the alleged abettor and the one who actually commits the crime. Anderson v. State, 66 Okl.Cr. 291, 91 P.2d 794 (1939). Absent proof of conspiracy, a conviction cannot be sustained as shown in several applicable decisions."

■ Careful scrutiny of the totality of facts in each case is required to determine whether a defendant charged with a violation of 63 O.S. § 2-401, acted as a seller or as a procuring agent of the buyer. This Court has recognized the procuring agent defense as sufficient to bar conviction of that agent for sale or distribution of drugs. See Posey v. State, supra. The cases upon which the defendant relies have normally dealt with the situation where the undercover agent contacts the defendant about wanting to purchase some drugs. In those cases the defendant merely facilitated the sale rather than instigated the sale. In the case at bar, the record reveals the defendant instigated the sale of PHC to the undercover officer. This determination is made from a reading of the entire record, and specifically from the following quoted excerpts from the record wherein it states:

"A. Doug is telling me as we talked outside, and that he was sure of his own knowledge that Paul at this time didn't have any marihuana, and, therefore, I couldn't pick any up.

He told me that he, Doug, however, had several connections for marihuana and wanted to—know if I was interested in him getting some and I told him it would be all right if he was sure Paul didn't have what I was supposed to get, and he said he would go in and see Paul and tell him that we were going to go look ·for some marijuana." [Tr. 10–11]

"A. When he told me he couldn't get the marihuana, he said he could get the PHC. We were driving back through the shopping center across north toward the Fish and Chips again and he asked me if I was interested in some of the PHC and I told him I would be, and he said I could buy it either in nickel bags, which is to say a five dollar quantity, or just by the hit, or the dosage as hit refers to." [Tr. 13]

■ The record reveals some evidence that the defendant and Vince, while on the porch of Vince's house, conspired or collaborated with the purpose being the illegal transaction in drugs which thereafter followed. We feel that the requirement of proof of a pre-arranged plan or conspiracy between the alleged abettor and the one who commits the crime should not be construed to mean that the State must prove a pre-arranged plan or conspiracy which is separated in time from the actual transaction of the drugs or marihuana. We find that the evidence of a meeting between the defendant and Vince was sufficient circumstantial evidence to submit to the jury the question of whether or not he conspired or abetted with the one who actually committed the crime.

We therefore hold that there were presented facts and circumstances from which the jury could reasonably conclude that the defendant was guilty as charged.

■ This Court has repeatedly held that where there is competent evidence in the record from which the jury could reasona-

bly conclude that defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See Turner v. State, Okl.Cr., 479 P.2d 631 (1971). Thus, we find defendant's proposition of error to be without merit, and the judgment and sentence appealed from is accordingly affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in results.