Johnny **HARWOOD**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–75–491.

Court of Criminal Appeals of Oklahoma.

Dec. 17, 1975.

**762**

Michael P. Warwick, Shawnee, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Johnny Harwood, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Pottawatomie County, Case No. CRF-74-562, for the offense of Unlawful Delivery of Marihuana, in violation of 63 O.S.1971, § 2–401, ¶ B 2. His punishment was fixed at a term of two (2) years' imprisonment with assessment of a fine in the amount of One ($1.00) Dollar. From said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness at trial was Dennis Dill who testified he was an undercover narcotics agent. He stated that on the first day of October, 1974, he was employed with the District Attorney's Office of Pottawatomie County to work undercover drug investigations in Shawnee, Oklahoma. He identified the defendant in court and testified that he first met the defendant at a convenience store in Shawnee at approximately 3:00 p. m. on the 5th of December. He further stated that upon greeting the defendant and one Charley Hargraves outside the convenience store the defendant proceeded to ask him if he wanted to buy some marihuana. He testified that he told the defendant he would "if it was good stuff." Thereafter he, Charley Hargraves and the defendant proceeded in his car to obtain the marihuana at one Chris Neely's house located at 821 West Main Street in Shawnee, Oklahoma. He testified that upon arrival at Chris Neely's house the defendant told Neely, who was in a wheelchair, that Dill wanted to buy some marihuana and to get a bag, whereupon Chris Neely wheeled to the bedroom and brought back approximately three bags of marihuana telling Dill to choose one. The witness testified that he chose a bag and paid Neely ten dollars. He further testified that several other people were in the house and that at the suggestion of one of these people the witness rolled up a cigarette with the marihuana he had purchased and handed it to the defendant who lighted it and passed the cigarette around approximately twice. Thereafter, the witness told them that he had to leave. He took Charley Hargraves and the defendant to Hargraves' house where Hargraves and the defendant picked up their clothes as they were moving into Chris Neely's house. Later that same evening, he testified, he met Dan Megehee at a prearranged location outside of Shawnee and turned over the evidence to him.

The State's next witness was Dan Megehee who testified he was an investigator for the District Attorney's Office of Pottawatomie County and stated that his primary duty was narcotics investigation. He further testified that on the evening of December 5, 1974, he met with Dennis Dill outside Shawnee at which time Dill gave him a bag of marihuana which Dill stated he had purchased from Chris Neely, Charley Hargraves and the defendant. Thereafter, he identified the defendant in court and identified the bag of marihuana, State's Exhibit No. 1, as being the same bag which Dill had given him and which he had in turn given to Detective Gary Rogers on the 9th of December, 1974, to transport to the Oklahoma State Bureau of Investigation. On cross-examination he testified that he performed a Duquenois-Levine field test on the substance before it was sent to the Bureau.

Gary Rogers testified he was a Detective for the Shawnee Police Department and stated that he received a bag of marihuana, State's Exhibit No. 1, from Investigator Dan Megehee on December 9, 1974, and thereafter transported it to the Oklahoma State Bureau of Investigation. He further testified to the identity of the evidence envelope which he had sealed with tape and initialed.

Mike McGeehon testified that he was a forensic chemist with the Oklahoma Bureau of Investigation and that he had occasion to test the bag of marihuana, State's Exhibit No.1, by performing a microscopic examination and a color test known as the Duquenois-Levine test. He also performed a Thinlayer Chromotography test and that based upon the results of these tests in his opinion the bag contained marihuana. On cross-examination he stated he had performed these three tests in excess of 2,000 times and he also identified his lab number and initials on the evidence envelope.

The defendant then took the stand and testified in his own behalf and stated that he did have occasion to see agent Dill at the convenience store on the 5th of December, but that it was the agent who first approached him concerning the purchase of marihuana and not he who approached the agent. He also stated that thereafter he, agent Dill and Charley Hargraves drove to Chris Neely's house at which time a bag of marihuana was obtained for Dill. On cross-examination he testified that he had stayed at Chris Neely's house a couple of days but that "he didn't do his business for him."

The defendant's first assignment of error contends the trial court erred in failing to sustain the defendant's demurrer to the evidence as the evidence presented was insufficient to prove the crime charged. The defendant alleges such assertion is supported by the evidence showing that the undercover agent, Dill, initiated the events resulting in the delivery or sale of marihuana and further that the defendant was not present at the sale or delivery, that no evidence showed the defendant had any financial interest in the transaction at any time and that, lastly, there was no evidence of joint plan or agreement between defendant and the actual vendor or distributor of the marihuana, Chris Neely. The defendant concludes by urging such facts rendered the evidence insufficient to prove the defendant guilty as a principal to the crime of unlawful delivery of marihuana.[1] And further, the defendant asserts that the evidence is also insufficient to establish guilt as an aider or abettor to the crime citing *Anderson v. State*, 66 Okl.Cr. 291, 91 P.2d 794 (1939) and *Jones v. State*, Okl.Cr., 481 P.2d 169 (1971).

We note that *Jones*, supra, involved facts which have given rise to judicial recognition of the procuring agent defense which in essence establishes that where a

[1]. Unlawful Delivery of Marihuana is prohibited under 63 O.S.1971, § 2–401, ¶ A2, which provides in pertinent part:
"A. Except as authorized by this act, it shall be unlawful for any person:

"2. To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance."

defendant was merely the procuring agent of the buyer of narcotics, normally an undercover agent, such a status constitutes a defense to a charge of unlawful sale of a narcotic drug. See, *Posey v. State*, Okl. Cr., 507 P.2d 576 (1973). However, in *Tipton v. State*, Okl Cr., 528 P.2d 1115 (1974), this Court correctly recognized that the procuring agent defense was only applicable in cases wherein the defendant was convicted under the previous statute prohibiting unlawful *sale* of controlled substances and not the amended statute proscribing the conduct of unlawful delivery or distribution of controlled substances.[2] See, 63 O.S.1961, § 401(10) and 63 O.S. 1971, § 2–401, ¶ A 2.

■ In the instant case the facts clearly show the defendant took the undercover agent to Chris Neely's house at which time the agent and Neely consummated a sale or delivery of marihuana. Undercover agent Dill testified the defendant offered to take him to obtain some marihuana which we note is in conflict with the defendant's testimony which in essence asserted the officer approached him inquiring as to where he might purchase some drugs. We note

the resolution of who instigated the incident in question is a factual determination within the province of the jury and will not be invaded by this Court. See, *Jones v. State*, Okl.Cr., 468 P.2d 805 (1970).

■ Under the attendant circumstances of this case, we find the resolution of this factual determination is not crucial to the sufficiency of the evidence to prove the defendant guilty of unlawful delivery. The trial court properly instructed the jury regarding the issue of aiding and abetting.[3] From the facts herein we conclude sufficient evidence existed of defendant's participation in the sale, consummated by a presumed friend of the defendant's, from which the jury properly concluded that the defendant aided and abetted in the delivery of the marihuana and, thus, under Oklahoma law was validly convicted of the crime charged.[4]

For the reasons herein stated we find defendant's first assignment of error to be without merit.

Defendant's second assignment of error asserts the trial court erred in overruling the defendant's motion for directed verdict

2. We are mindful of the two cases of *Yetter v. State*, Okl.Cr., 528 P.2d 345 (1974) and *Vanostrum v. State*, Okl.Cr., 539 P.2d 395 (1974 rehearing denied February, 1975), in which this Court discussed a procuring agent defense under the circumstances wherein the defendant was convicted under the amended statute but we note the holding of those cases was founded upon the sufficiency of the evidence to prove the defendant guilty of the crime charged as an aider and abettor and not the presence or absence of procuring agent status. The presence or absence of a procuring agent status is irrelevant under the amended statute and thus the statute as amended clearly precludes the use of the procuring agent defense as stated in *Tipton*, supra.

3. Instruction No. 6 reads as follows:
"All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission are regarded by the law as principals in the crime thus committed and

are equally guilty thereof. However, you are further instructed that mere standing by, although standing by with guilty knowledge, does not constitute a person as a principal.
"One who does not actively commit the offense, but who aids, promotes, or encourages its commission either by act or counsel or both, is not deemed by law to be guilty and shall not be found guilty of the crime unless he did what he did knowingly and with criminal intent. To abet another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting, or aiding the commission of such criminal offense."

4. As an aider and abettor the defendant, under Oklahoma law, was properly convicted for unlawful delivery of marihuana as 21 O.S.1971, § 172, provides:
"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

for the reason the evidence established the defense of entrapment. The defendant urges the undercover officer's testimony revealed the defendant made the initial inquiry concerning the purchase of marihuana and that such testimony is unbelievable and thus the defendant's testimony that the undercover officer approached the defendant about the purchase of marihuana is far more believable therefore establishing entrapment.

■■■ Such a conclusion is premised upon the factual determination that the undercover officer instigated the sale or delivery of marihuana. Yet, the believability or credibility of testimony is within the province of the jury and not this Court. See, *Fritts v. State*, Okl.Cr., 487 P.2d 1188, 1191 (1971). The controversial evidence in this case required the issue of entrapment to be submitted to the jury upon proper instruction as entrapment was not established as a matter of law. *Buchanan v. State*, Okl.Cr., 532 P.2d 469 (1973). For this reason we find the defendant's second assignment of error to be without merit.

■■ Defendant's third assignment of error asserts the propriety of the entrapment instruction given to the jury.[5] The defendant argues that the language in the instruction, "with a corrupt private purpose to serve," is misleading and, further, that the provision in the instruction as, "he being an otherwise innocent person," was unduly restrictive. Such a contention was asserted in *Reclus v. State*, Okl.Cr., 510 P. 2d 959 (1973), and was rejected by this Court. The defendant further urges that the instruction given should only be used when the alleged entrapper is a private person not acting as a law enforcement officer or other agent, citing *Beasley v. State*, Okl.Cr., 282 P.2d 249 (1955). In that case the allegedly entrapping person was a private person and not an undercover police officer. The court noted that upon retrial of the case an instruction should be given to include persons acting under the direction of the officers or any other person with a corrupt private purpose to serve, and not as was given in the first trial wherein the court instructed simply that if the jury believed from the evidence that the officers, or those acting under them, first suggested the commission of the criminal act, then in that event it would be the duty of the jury to acquit the defendant.

In the instant case the allegedly entrapping person was a police officer. In the case of *Barber v. State*, Okl.Cr., 388 P.2d 320 (1963), this Court in Syllabi numbers 11 and 12 stated:

> "All instructions given by the trial court should be considered, and where they fairly and fully present the issues involved, and no fundamental error occurs whereby the defendant has been prejudiced or deprived of a substantial right, the case will not be reversed on appeal.

> "It is not error for trial court in criminal prosecution to refuse defendant's requested instructions where substance of requested instructions is covered by given instructions."

> "However, if you believe from the evidence that the first suggestion for the commission of the crime came from the Defendant and that all of the essential acts constituting the crime were done by him, then the fact that the officers, or other person, furnished an opportunity and lent aid in the commission of the offense less than the performing of some essential act constituting the offense, then, and in that event, the defense of entrapment would not apply."

5. The instruction on entrapment in the instant case was as follows:
   "The Defendant has interposed as one of his defenses, the defense of entrapment. And, in this connection, you are instructed that if you believe from the evidence that the officers, or those acting under them, or any other person with a corrupt private purpose to serve, first suggested the commission of the criminal act, or did first lure the accused into the commission of such acts, he being an otherwise innocent person, then and in that event, it will be your duty to hold for the Defendant and acquit him.

In the instant case we have reviewed all the instructions given by the trial court, and especially Instruction No. 7 of which defendant now complains, and we are of the opinion that the instructions, as a whole, fairly and fully present the issues involved in the instant case. We further note that the defendant's requested instruction was substantially covered in the trial court's instruction. We, therefore, find the defendant's final assignment of error to be without merit.

For all the foregoing reasons, we are of the opinion that the judgment and sentence appealed from should be and the same is, hereby, affirmed.

BUSSEY, J., concurs.

BRETT, P. J., concurs in results.